1168), that that statute of New York, now in force, was put in evidence. The court, therefore, was properly made aware of the tentative character of the decree so far as it related to future alimony.

It remains, then, to consider whether we may indulge in any presumption that the law of the District of Columbia in respect of such decrees is the same as section 1759 of our Code. In the absence of proof of the law of any other state, there is no presumption that the statutes of this state are there in force. That presumption applies only to the common law. Vanderpoel v. Gorman, 140 N. Y. 563, 568, 35 N. E. 932, 24 L. R. A. 548, 37 Am. St. Rep. 601; First National Bank v. Broadway National Bank, 156 N. Y. 459, 472, 51 N. E. 398, 42 L. R. A. 139; Lewisohn v. Kent & Stanley Co., 87 Hun, 257, 260, 33 N. Y. Supp. 826. The jurisdiction of the courts of our state over the subject of divorce, however, is derived exclusively from statute (Walker v. Walker, supra); it having been repeatedly held that the colony did not take over the law of England, respecting divorce, as it existed at the time of the separation. See Gilbert on Domestic Relations (2d Ed.) p. 41, notes, and cases there cited.

Upon all these considerations, it appearing that the decree for alimony in the case at bar is final in form, and there being neither allegation in the complaint nor warranted presumption that such a decree is subject to modification, an action may properly be maintained in this state, based upon the decree, and the demurrer was, therefore, properly overruled.

Interlocutory judgment affirmed, with costs, with leave to defendant to answer within six days upon payment of costs in this court and in the court below. All concur.

━━━━━━━━

MITNICK v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. May 26, 1910.)

1. APPEAL AND ERROR (§ 1002*)—REVIEW—QUESTIONS OF FACT.

Where the testimony is conflicting, and the credibility of witnesses is directly involved, the appellate court will be slow to reject the jury's finding of facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

2. WITNESSES (§ 325*)—IMPEACHMENT—CONTRADICTION OF ONE'S OWN WITNESS.

Where a party cross-examined his adversary's witness as to matters not referred to in the examination in chief, he thereby, as to such matters, made the witness his own witness, and as to the matters thus brought out could not impeach the witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1098; Dec. Dig. § 325.*]

3. WITNESSES (§ 383*)—IMPEACHMENT—IMMATERIAL MATTERS.

Where an employé was driving a vehicle in which the employer was riding at the time of a collision of the vehicle with a street car, declarations by the employer, several hours after the accident, relating to matters connected therewith, were not admissible against the employé, in an action by him against the street railroad company; and hence such dec-

─────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

larations could not be made the basis for an impeachment of the employer, who testified as a witness for the employé.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1224; Dec. Dig. § 383.*]

Appeal from Trial Term, Kings County.

Action by Flora Mitnick, administratrix of Samuel Mitnick, deceased, against the Nassau Electric Railroad Company. From a judgment for defendant, and from an order denying a motion for new trial, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

Moses Feltenstein, for appellant.

D. A. Marsh, for respondent.

CARR, J. This is an appeal from a judgment for the defendant, entered upon a verdict of a jury in an action to recover damages for the death of the plaintiff's husband through the alleged negligence of the defendant. The accident in question happened while the decedent was driving a furniture truck on a foggy night in a sparsely settled part of the borough of Brooklyn. The truck was being driven along the tracks of the defendant railroad company, and one of its passenger cars came into violent collision with the rear end of the truck. The chief controversy at the trial centered around the disputed question whether the truck had a lighted lantern suspended from its rear axle at the time of the collision. The judgment is attacked as being against the weight of evidence, and on the further ground of error on the part of the trial court in the admission of certain evidence offered by the defendant. The case was submitted to the jury by the learned trial court by a charge which clearly set forth the facts at issue and the rules of law to be applied thereto. No exception was taken to the charge. The conflict of testimony as to the facts was sharp, and the credibility of the various witnesses was directly involved in a proper ascertainment of the truth, and, under the circumstances of this case, we should be slow to reject the jury's finding on the facts.

There is, however, a serious question of law as to the admission of evidence, which is not simply technical, as the evidence in question must have played a large part in the jury's determination of the facts. The plaintiff produced certain witnesses to show that at the time the truck started out in its business on the night of the accident it had a lighted lantern hanging on its rear axle, and other witnesses to show that a short time before the accident the light was still there. The defense produced a number of witnesses, who testified that they came to the scene of the accident immediately after the happening, and looked for and could find no lantern on the truck, nor any evidences of there having been one. The plaintiff produced further evidence that on the morning after the accident a dented lantern was found hanging to the rear axle of the truck, which had been left at the place of the accident overnight. It was the evident theory of the defense that some one had come there after the occurrence and deliberately put the lantern where it was found in the morning, in order to manufacture a case, either for the plaintiff or for the decedent's employer, who owned the truck.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

As to this there was no direct evidence; but it was sought to show it by inference. Among the witnesses called by the plaintiff was one Schmidt, who was one of the decedent's employers. On his direct examination he testified that he was on the truck at the time of the accident, and that a lantern had been hung on its rear axle as it started out that night. He gave no testimony whatever as to the lantern said to have been found on the rear axle of the truck on the next morning. On his cross-examination he was asked if he had not returned with some friends to the scene of the accident, some time thereafter during the night, in a buggy which displayed a lantern, and whether, on coming away therefrom, he was not stopped by a police officer, who inquired from him as to what he had done with the lantern which had been in the buggy. These questions were objected to by the plaintiff as not binding upon her; but he was permitted to answer. He was then asked whether he had not told the policeman that he had left the lantern with one of his helpers, who was then in charge of the injured truck. This was likewise objected to, and he answered that he had not so stated. This line of inquiry was not cross-examination as to anything to which he had testified on the direct. In pursuing it, the defendant made him its own witness. Later the defendant called the police officer in question, who testified, over objection, that Schmidt told him that he had left the lantern in question with his helper at the place of the accident. This helper testified that Schmidt had left no lantern with him. As before stated, this bit of evidence was elicited by the defendant to account for the lantern found on the truck on the next morning, and it was the evident theory of the defendant that the lantern so found was one which Schmidt had given to the helper some hours after the accident, and which the helper hung on the axle of the truck for the purpose of deception.

I think it was clear error to admit the testimony of the police officer, Metzger, to contradict the denial of Schmidt, when he was being examined really in behalf of the defendant, though apparently on cross-examination. Schmidt could not bind the plaintiff by any contradictory declarations, made under these circumstances. Nor was the testimony of Metzger, the police officer, admissible for the purpose of impeaching the veracity of Schmidt, as the respondent contends; for it went only in contradiction of testimony of Schmidt, given as the defendant's witness, and as to an occurrence happening hours after the accident which caused the issue at trial. I think the question here presented is not distinguishable from that decided in Kay v. Metropolitan Street Ry. Co., 163 N. Y. 447, 57 N. E. 751, where a very similar state of facts was presented.

I recommend, therefore, that the judgment and order be reversed, and a new trial granted; costs to abide the event. All concur.